**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. CCB-19-036** |
| | * | |
| **GARY CREEK,** | * | |
| | * | |
| **Defendant.** | * | |
| | ****** | |

**SUPPLEMENT TO OPPOSITION TO**
**MOTION FOR RECONSIDERATION OF DETENTION ORDER**

The United States of America, by and through counsel, respectfully submits this supplement to its previously-filed opposition to Defendant Gary Creek's motions seeking pretrial release. After the Court denied the motions and the parties briefed an interlocutory appeal, the United States Court of Appeals for the Fourth Circuit remanded so this Court could consider in the first instance how the defendant's asserted "compelling reason" under 18 U.S.C. § 3142(i) balances against the other factors set forth in the Bail Reform Act. Pursuant to the Court's April 20, 2020 order, this supplement addresses the factual and legal issues raised by the Fourth Circuit.

As this Court has previously found on multiple occasions, detention is appropriate under all relevant Bail Reform Act considerations. Nothing has changed with respect to those traditional Bail Reform Act considerations captured in 18 U.S.C. § 3142(g), despite the defendant's newly proposed residence. He remains indicted on narcotics and firearm offenses well within the Bail Reform Act's contemplation of danger, and he committed those offenses less than ten years after being convicted in the Eastern District of Pennsylvania of narcotics trafficking and possession of a firearm in furtherance of such trafficking. Section 3142(i) permits, but does not necessarily require, "temporary" release based on the presence of a need to prepare for trial or another "compelling reason". Thus, the nature of the COVID-19 event, both generally and specifically in

light of the defendant's underlying medical conditions, does not necessarily and absolutely require release.  The recent pre-trial order in *Banks v. Booth*, No. 20-849, 2020 WL 1914896 (D.D.C. Apr. 19, 2020), no doubt expresses concerns about conditions at Correctional Treatment Facility ("CTF"), the facility where the defendant is detained.  However, to the extent those conditions and a heightened threat of a COVID-19 infection may constitute a "compelling reason" for release, that circumstance is but one factor relevant to the detention determination.  That factor cannot be divorced from the danger assessment based on the charged offenses and criminal history.

Also important are what did and did not occur as a result of the *Banks* order: CTF is now under court supervision with respect to its implementation of reasonable procedures to limit the effects of COVID-19, and the court rejected the plaintiffs' demand for immediate release.  The fact of federal judicial supervision of COVID-19 measures counterbalances the reported deficiencies.  But the risks of danger continue to loom large in this case.  As to this defendant, facts developed since the Court's last order do not tip the scale that heavily favored detention.

## PROCEDURAL HISTORY AND RELEVANT ISSUES

On March 24, 2020, the Court issued a memorandum order denying the defendant's March 18, 2020 motion seeking pretrial release.  ECF 368.  Days later, the Court denied a motion to reconsider, ECF 370, and the defendant sought interlocutory appeal.  After receiving the opening and response briefs, the Fourth Circuit issued an order remanding the case for the "limited purpose" of considering how certain various factual and legal considerations relevant to release under 18 U.S.C. § 3142(i) balanced against the traditional Bail Reform Act factors.  ECF 402.  On April 20, 2020, this Court issued an order (ECF 408) reflecting the remand scope and seeking supplemental briefing on the following four topics:

1. The defendant's precise medical condition(s) and severity of risk that the COVID-19 virus poses to him, given his existing medical condition(s) and his treatment history[;]

2. The current conditions related to the COVID-19 virus in the facility where the defendant is detained, including the available medical care for those diagnosed with or exposed to the virus, and any screening of those not yet diagnosed with the virus;

3. Details about the proposed release plan for the defendant, including the identities, ages, health conditions, and any criminal history of individuals who will be residing with the defendant, the availability of appropriate facilities for quarantine of the defendant upon release, and the plan for providing medical care to the defendant, if needed, upon release; and

4. Briefing as to whether the defendant meets the criteria for temporary release under 18 U.S.C. 3142(i), including whether the defendant has shown a compelling need and an appropriate release plan. *See, e.g.*, the four-factor test set forth in *U.S. v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. March 25, 2020); *see also U.S. v. Jason Lawrence Green,* No. 1:19-CR-00539-CCB-1, 2020 WL 1873967 (D. Md. Apr. 15, 2020) (Coulson, J.).

## ARGUMENT

### I.        The Defendant's medical condition and COVID-19 risks to him.

The United States acknowledges the presence of multiple medical conditions that may increase the risks COVID-19 pose to the defendant.  The defendant's supplement references a number of medical conditions previously identified in his motion for release.  The opinion of W. Anthony Gerard, MD, submitted with the supplement, suggests that the defendant's risk of death from a COVID-19 infection is three to five times[1] greater than the risk to a similarly-aged individual who lacks any aggravating health conditions.  Def.'s Second Suppl., Ex. 1 at 3-4.  While it is unclear from the filing what that risk is in objective terms, various opinions of the Court have found the presence of such aggravating conditions a relevant yet non-dispositive consideration

---

[1] In one place the opinion letter says "likely . . . 3 to 5 times", yet in another it says the risk "is five time[s] higher" than others.

under the Bail Reform Act.  *See, e.g.*, *United States v. Martin*, PWG-19-140, 2020 WL 1274857 (D. Md. Mar. 17, 2020) (denying release of defendant with "diabetes, high blood pressure, asthma, and pain").

As to the defendant's treatment history, documents submitted to the Court under seal reflect efforts to monitor the defendant's condition with respect to potential COVID-19 transmission. Specifically, CTF records show daily monitoring of the defendant's vital signs for a four-week period beginning on March 26, when he was placed in quarantine due to possible exposure to a COVID-19 positive detainee.[2]  The records suggest the intended monitoring period was to be only two weeks; actual monitoring lasted well beyond that.  The records also reflect provision of medications relevant to the defendant's pre-existing conditions at various times during his detention, including during the quarantine period.  And notes from what appears to be the first day of quarantine reflect that the defendant did not exhibit any symptoms associated with COVID-19 and was educated about COVID-19.  Thus, notwithstanding apparent systemic issues referenced in *Banks*, the facts specific to the defendant show attention to his risk of infection.  In addition, the defendant does not demonstrate that CTF is not properly managing his existing medical conditions, or that the proposed release necessarily entails medical care greater what is available at CTF.

## II.        The current conditions at CTF related to the COVID-19 virus.

The *Banks* order made plain the conditions at CTF as of early April.  Judge Kollar-Kotelly found that many of DOC's measures prescribed by internal policy have not been properly implemented, at least as of April 12, when the independent inspectors in *Banks* visited the facility; that further measures are needed; and that further education of staff and inmates regarding the

---

[2] The referenced records are those discussed in the April 21, 2020 Memorandum to Counsel.  ECF 421.  Undersigned counsel believe these to be docketed under seal at ECF 412.

measures that exist is necessary.  *See generally*, *Banks*, 2020 WL 1914896.  But as the court recognized, "COVID-19 poses an unprecedented challenge and the precautionary measures taken by [DOC] are rapidly evolving."  *Id.* at *8; *see also id.* at *7 (recognizing that DOC's "response to this sudden and unprecedented pandemic is ongoing").  With the recognition that DOC took responsive steps and its response continues to evolve, Judge Kollar-Kotelly issued an extensive order to remediate the deficiencies in DOC's implementation of its policies.  Remediation includes improvement to sick call triage processes, cell restriction monitoring, staff training, quarantine housing, use of personal protective equipment, access to legal calls, and social distancing strategies, among other things.  On April 17, 2020, DOC's director issued a memorandum to all employees and contractors addressing many of same issues and advising staff of pre-existing and updated protocols relevant to the COVID-19 response.  *See id.* at *60 (Exhibit 11 to the opinion).

The defendant does not argue that these enhanced measures—or the court's supervision over their implementation—are insufficient to address the needs of detainees generally or the defendant in particular.   Rather, the defendant's supplement recounts and references the deficiencies identified by Judge Kollar-Kotelly.  But DOC has been ordered to remediate those deficiencies under the close supervision of the United States District Court for the District of Columbia.  Thus, the deficiencies, while troublesome, do not necessarily merit release going forward.  Indeed, the *Banks* order specifically denied the plaintiffs' request for the release of prisoners as not called for by the record.  *Banks*, 2020 WL 1914896, at * 13.

With respect to the DOC detainees who have tested positive, DOC's medical team and Unity Health Care continue to work with the D.C. Department of Health ("DOH") on contact tracing and to protect the health and wellbeing of other DOC detainees.  As part of these measures, DOC has implemented various levels of quarantine, depending on the inmates' symptoms and

potential contact with infected individuals.  Moreover, while the defendant points to the numbers

of detainees who have tested positive and the rate at which the numbers have increased, as

Magistrate Judge Day has recognized, "medical experts have universally and correctly predicted

that the raw numbers of those who would be infected would multiply.  This fact has borne true no

matter when in the country the virus has appeared. . . . Merely casting numbers about the rising

infection rate, without more, is not helpful." *United States v. Ray*, TDC-19-215, ECF 76 at 4

(D. Md. Apr. 13, 2020).  Moreover, as of the date of this filing, at least 60 DOC detainees who

previously tested positive for COVID-19 have since recovered and are no longer in isolation.

In short, the circumstances of COVID-19 pose significant challenges for CTF, even beyond

those affecting virtually every institution and aspect of society.  The conditions at CTF are now

subject to judicial supervision and scrutiny for the foreseeable future.  Any evaluation of those

conditions must consider not only their shortcomings but their evolution and likely improvement

in response to the court's directives.  *See United States v. Sagastume-Garcia*, No. CR 20-40

(BAH), 2020 WL 1935555, at *5 (D.D.C. Apr. 22, 2020) (expressing the court's "confidence that

the D.C. Department of Corrections . . . will do everything it can to comply with that order [in

*Banks*] so as to prevent the further spread of the virus to its residents and staff").

**III.      The defendant's proposed release plan.**

In his supplemental submissions, the defendant proposed release to the residence of his

sister, a member of the Baltimore City Fire Department and resident of Harford County.  The

government has limited information about the proposed residence, having been advised of only its

location and the names and ages of its occupants.  It is unclear the extent to which confinement at

the proposed residence would be superior to CTF or otherwise sufficient in terms of attention to

underlying health issues or a response to contraction of COVID-19 by any resident.  One other

6

potential issue may be the extent to which the defendant's sister—in responding to service calls[3]—or other resident by virtue of their employment or otherwise were subject to risks of transmission through social interaction.   But regardless of whether the proposed custodian is otherwise satisfactory, release is not warranted and "necessary" under the Bail Reform Act.

IV.        **Temporary release under 18 U.S.C. § 3142(i) is inappropriate on this record.**

Regardless of whether the defendant's circumstances rise to a "compelling reason" under 18 U.S.C. § 3142(i), the balance of considerations under the Bail Reform Act favors detention. The defendant bears the burden of establishing circumstances warranting release under § 3142(i). *Clark*, 2020 WL 1446895, at *2 (citation omitted).  The Court has already considered that the risks animating the usual § 3142(g) analysis compelled detention.  The question now is whether the compelling reason as proffered by the defendant counterbalances the risks of danger previously identified such that release is necessary.  The answer has been and remains no.

A proffered "compelling reason" is not to be viewed "in a vacuum."  *United States v. Cox*, No. 2:19-cr-00271, 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020).   As referenced in the Court's April 20 order, courts consider the following non-exclusive considerations for release requests citing COVID-19: (1) the original grounds for detention; (2) the specificity of the defendant's concerns; (3) the extent to which the propose release mitigates the COVID-19 risks to the defendant; and (4) the likelihood the proposed release increases COVID-19 risks to others. *Clark*, 2020 WL 1446895, at *3.  These factors are not necessarily afforded equal weight.  *Id.*

---

[3] Given the relevance of transmission risks, it should be noted that as of April 18, 2020, eleven Baltimore City Fire Department members tested positive for COVID-19, and two other members were quarantined at least until the end of last week.  *See* McKenna Oxenden, *Baltimore City Fire Department says 11 employees tested positive for coronavirus, two others in quarantine* (Apr. 20, 2020),        https://www.baltimoresun.com/coronavirus/bs-md-fire-department-coronavirus-20200421-ddm7epyrxzg6jo7mllqjbtjefa-story.html (last accessed April 23, 2020).

The original grounds for detention should be the driving factor here, as § 3142(g) reflect the core concerns of the Bail Reform Act. *See id.*; *United States v. Gumora*, No. 20 CR 144, 2020 WL 1862361, at *9 & n.10 (S.D.N.Y. Apr. 14, 2020) ("a defendant's health risks alone should not be sufficient to justify release absent actual consideration of the Bail Reform Act factors—the defendant's danger to the community and risk of flight"); *United States v. Santana*, No. 1:19-cr-251, 2020 WL 1692010, at *4 (M.D. Pa. Apr. 7, 2020); *Cox*, 2020 WL 1491180, at *2.

      1.  *The original grounds for detention.*

The original grounds for detention weigh heavily in favor of detention, as the government has explained repeatedly and this Court has found multiple times. *See* ECF 364; ECF 368 at 2-3. Particularly relevant are the nature of the charged offenses and the proffered evidence of the defendant's connection to, possession of, and trafficking in firearms. Those activities, which were demonstrated through text messages, phone calls, and allegations in the complaint against the defendant, are not the sorts of activities meaningfully curbed by even release to 24/7 home confinement. Home confinement would not eliminate his ability to coordinate drug and firearm trafficking among and by associates who, as previously explained, were identified during the investigation but remain in communities where the defendant operated. Location monitoring, even under normal circumstances, may have little effect disrupting these communications or visits to the proposed residence by others aiding or otherwise engaged in such activities.[4] Furthermore, the defendant's engaged in the charged offenses after incarceration for federal narcotics and firearms convictions and a supervised release violation. This weighs heavily in favor of doubting that he would comply with release conditions or otherwise avoid recidivating *again*. *See id.*

---

[4] For the same reason, his health conditions represented as causing limited mobility do not favor release. *Cf. United States v. Little*, 235 F. Supp. 3d 272, 279-80 (D.D.C. 2017).

Offering no evidence materially rebutting the Court's previous findings, the defendant attacks the sufficiency of original grounds for detention.  As an initial matter, the returning of the indictment against him establishes probable cause of his involvement in the charged conspiracies, one of which provides a presumption of detention.  *United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007).  He encourages the Court to discount the government's evidence as being nothing more than a "handful" of electronic communications and phone calls directly involving the defendant.  Even if true, which it is not, there is no authority suggesting that such communications would be, as a matter of law, insufficient to show participation in narcotics or firearms conspiracies.[5]  *See, e.g.*, *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992) (once conspiracy is established, "the evidence need only establish a slight connection" to the defendant).  The defendant also demands, without citation, the Court summarily discount substantive allegations set forth in the complaint (which predates the indictment) regarding drug trafficking that, while yet to be assessed in the crucible of trial, are probative at the bail review stage and sufficient to establish guilt.  *Cf. United States v. Wilson*, 135 F.3d 291, 306-07 (4th Cir. 1998) (witness testimony about a defendant's involvement in drug trafficking sufficient to sustain conviction).  The defendant's suggestion that acts of others should not be attributable to him contravenes well settled conspiracy law.  *See, e.g.*, *United States v. Strickland*, 245 F.3d 368, 384-85 (4th Cir. 2001).  And while the defendant implies that a co-defendant might actually be responsible for the ammunition, drugs, and drug paraphernalia recovered from the defendant's residence—a suggestion that may support the government's theory of a conspiracy among the

---

[5] Not specifically referenced in the prior briefs is the defendant's possession of five cellular phones at the time of his arrest, a fact that is circumstantial evidence of participation in a drug trafficking conspiracy.  *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010).

defendants[6]—a factfinder could find such evidence as establishing the defendant's connection to those items, through constructive possession or otherwise.  *Cf. United States v. Gomez-Jimenez*, 750 F.3d 370, 379 (4th Cir. 2014) (discussing circumstantial evidence sufficient to convict of a drug conspiracy).  With the standard of proof being less onerous at this stage, the Court should reject the defendant's attacks on the proffered evidence and not turn a blind eye to the violence perpetrated by the defendant and his associates through their drug trafficking and firearm use.

### 2.  *The specificity of the defendant's concerns.*

This factor does not move the needle toward release.  The defendant's concerns are not unfounded given the available information about COVID-19 and the *Banks* order.  But, as discussed above, the record demonstrates that, generally, CTF continues evolving in its approach to respond to COVID, and, specifically, the CTF staff provided daily monitoring of the defendant for approximately four weeks.  Judicial supervision of CTF going forward should lead to improved conditions, thereby counterbalancing the defendant's concerns.  *See Sagastume-Garcia*, 2020 WL 1935555, at *5.

### 3.  *The impact of the proposed release on risks to the defendant and others.*

Release is inappropriate for the reasons discussed above, regardless of the proposed third-party custodian.  And the impact of the propose release on transmission risks is not clearly defined or established through the limited information regarding residential occupants or the purported ability of the defendant's sister to provide appropriate medical treatment for either underlying or new health issues.  If health and gubernatorial directives are followed, release to a private residence

---

[6] As charged in Counts 13 and 14 and described in discovery, the referenced co-defendant, Keishonne Moore, was stopped with co-defendant Desean Johnson in a vehicle containing narcotics and a firearm.  Moore, who sold narcotics to undercover officers during this investigation, is identified in the complaint as distributing narcotics supplied by the defendant, and was detained one week before the February 2019 search of the defendant's home.  ECF 37, 258.

may reduce risk of infection.  But risks of transmission remain substantial to all individuals, detained or not.  *See United States v. Gray*, No. GJH-19-407, 2020 WL 1554392, at *2 n.3 (recognizing "the unfortunate reality that public health officials are struggling to contain the spread of the virus in the general public as well").  And previous noncompliance with court supervision is reason for "significant pause" in concluding that a defendant previously convicted of federal drug and firearm offenses (and supervised release) would comply with such directives.  *Green,* 2020 WL 1873967, at *3.  Furthermore, the defendant assumes that detainees who contract COVID-19 going forward will be treated in an inadequate fashion suggested in *Banks*.  That conclusion is not probable given DOC's interest in complying with the court's order.  In any event, the impact of proposed release does not counterbalance the risks and dangers previously identified.

> ### 4.  Under the circumstances, the defendant fails to show that "temporary release" is "necessary" under Section 3142(i).

Given the strong interest in managing risks of danger to the community, the circumstances of this case continue to require pretrial detention.  Given the Bail Reform Act's focus on risks of flight and danger, the factors weighing strongly in favor of detention overshadow those factors that are closer to neutral.  Regardless of whether the COVID-19 event might be extraordinary enough to potentially be a "compelling reason" for release, it is not so compelling as to make release necessary under Section 3142(i) on these facts.

Release under Section 3142(i) has been used "sparingly" to "justify temporary release for a specific medical treatment."  *Green*, 2020 WL 1873967, at *3.  An often cited case for release under subsection (i) on medical grounds is *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993), where the defendant was released *to a hospital* because he suffered from the late stages of a terminal AIDS-related illness that could not be managed by a prison facility.  There is no suggestion that the situation here is so grave as to outweigh the substantial risks of release.

The government is aware of a recent decision of this Court granting release under Section 3142(i) in light of the *Banks* findings. *United States v. Keaton*, TDC-18-0215 (D. Md.), ECF 84. The government submits that *Keaton* is distinguishable with respect to the risk analysis and balancing of the relevant circumstances. After discussing *Banks*, Judge Chaung assessed whether clear and convincing evidence showed the defendant was not likely to flee or be a risk of danger, and therefore permitted release. *Id.* at 6. In that case, the criminal history reflected no adult convictions for crimes of violence and that Keaton's most recent conviction was approximately 20 years old. *Id.* And in assessing the charges of firearm possession and possession with intent to distribute narcotics, the court found no evidence that the charged firearms were actively used in connection with drug trafficking or any other crime. *Id.*

In stark contrast to *Keaton*, the circumstances in this matter involve evidence connecting firearms to drug trafficking *and* other crimes and a criminal history that is less stale and more troubling. As an initial matter, the defendant was indicted for conspiracy to distribute more than 280 grams of cocaine base (thus triggering a ten-year mandatory minimum sentence) and conspiracy to possess firearms in furtherance of drug trafficking. That fact alone sets this case apart from a case with "no evidence" connecting firearms to drugs. The communications referenced in the government's proffer connect the defendant—as a source of firearms—to individuals charged in this case with substantive drug trafficking offenses. *See* ECF 364 at 4-5. Other individuals charged in the same conspiracies have been involved in shootings of rival drug traffickers. *Id.* at 11. Further, the seizures from the defendant's residence provide evidence of a connection between firearms and narcotics specific to these offenses and this group of individuals. As to criminal history, unlike *Keaton*, the defendant's federal drug and gun convictions under 21 U.S.C. § 846 and 18 U.S.C. § 924(c) are less ten years old and were followed by a period of

incarceration for a violation of supervised release.  The risks here are greater than in *Keaton* and are thus not counterbalanced by the proffered compelling reason for release.

Finally, it is important to consider the context of the "compelling reason" provision. Congress considers release permissible where the proffered reason is akin to a need to prepare for trial.[7]  18 U.S.C. § 3142(i).  Recent decisions of this Court read the provision as permitting short-term release for reasons such as funeral attendance or "other limited specific reasons" subject to law enforcement supervision.  *See United States v. Brown*, No. CCB-19-576, 2020 WL 1554059 (D. Md. Apr. 1, 2020); *United States v. Moran*, No. SAG-19-0585, 2020 WL 1663366 (D. Md. Apr. 3, 2020).  The open-ended nature of this request, which seeks release to home and not a medical facility and is untethered to a specific medical condition beyond the facility's treatment capabilities, further counsels against release.

## CONCLUSION

For the foregoing reasons, the Court should reaffirm its denial of the defendant's motion for reconsideration of the detention order.

Respectfully submitted,

Robert K. Hur
United States Attorney

_____/s/_____
Charles D. Austin
Patricia C. McLane
Assistant United States Attorneys

---

[7] The defendant does not appear to argue release is necessary to prepare for trial. Such argument is unpersuasive given there is no trial date set in this case and, in any event, the Court has suspended trials until at least June 5, 2020.  *See Green*, 2020 WL 1873967, at *5.  And to the extent he raises access to counsel as an issue, Def.'s First Suppl. at 6 n.3, Chief Judge Bredar recently ordered DOC to provide detainees from this District access to counsel by telephone or other means.  *See* Standing Order, Misc. No. 20-146, ECF 14 (Apr. 23, 2020).

## <u>CERTIFICATE OF SERVICE</u>

**THIS IS TO CERTIFY** that on this 24th day of April 2020, a copy of the foregoing was

filed on the Court's ECF filing system, causing service to all counsel of record.

_____/s/_____
Charles D. Austin
Assistant United States Attorney