AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Maryland

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   19-2557-8AG |
| Account Information stored at Instagram 1601 Willow Road, Menlo Park, California, 94025 | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachments B-1

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Duty Magistrate Judge _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      8/2/19
                          9:22am

City and state:      Baltimore, Maryland

_____
*Judge's signature*

Stephanie A. Gallagher, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>19-2557-SAW | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____


_____
*Executing officer's signature*

_____
*Printed name and title*

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Maryland

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. *19-2557-8A*[hw] |
| Account Information stored at Instagram 1601 Willow Road, Menlo Park, California, 94025 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B-1

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1962(d), 922(g), 924(c) 21 U.S.C. §846, 841 | Racketeering conspiracy; Felon in possession; Possession of firearm in furtherance of a crime; Conspiracy to distribute controlled dangerous substances (CDS); Distribution and possession with intent to distribute CDS |

The application is based on these facts:

See attached Affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lindsay B. Erbe, Special Agent ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____8/2/19_____

_____
*Judge's signature*

City and state:  Baltimore, Maryland

Stephanie A. Gallagher, U.S. Magistrate Judge
_____
*Printed name and title*

*19-2557-8aw- #2 19-2559-8aw-*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS

I, Special Agent Lindsay B. Erbe, of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

1.      This affidavit is made in support of an application pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for warrants requiring Instagram and Facebook and Twitter, social-networking companies all located in California, to disclose to the government records and other information in their possession pertaining to 10 Instagram accounts, further described in Attachment A-1, eight Facebook accounts, further described in Attachment A-2; and 10 Twitter accounts, further described in Attachment A-3; and below (collectively, the "**SUBJECT ACCOUNTS**"):

a.      Instagram Accounts (Attachment A-1):

  i.   the Instagram account associated with the username "**harfordroad__neik**", believed to belong to Demetres MOORE ("**SUBJECT ACCOUNT 1**");

  ii.  the Instagram account associated with the username "**__damenace**", believed to belong to Desean JOHNSON ("**SUBJECT ACCOUNT 2**");

  iii. the Instagram account associated with the username "**keedie_1600**", believed to belong to Keishonne MOORE ("**SUBJECT ACCOUNT 3**");

  iv.  the Instagram account associated with the username "**16oo_tayy**", believed to belong to Quamonta JACKSON ("**SUBJECT ACCOUNT 4**");

  v.   the Instagram account associated with the username "**mooda_theshooota**", believed to belong to Davonta MCCROREY ("**SUBJECT ACCOUNT 5**");

  vi.  the Instagram associated with the username "**z13neekneek**", believed to belong to Domaneek BRADLEY ("**SUBJECT ACCOUNT 6**");

  vii. the Instagram account associated with the username "**hov_a_realnigga**", believed to belong to Gary CREEK ("**SUBJECT ACCOUNT 7**");

   viii.   the Instagram account associated with the username "**chuck_1600**", believed to be used by Charles COLEMAN ("**SUBJECT ACCOUNT 8**");

   ix.   the Instagram account associated with the username "**dayonsavage**", believed to belong to Dayon JETER ("**SUBJECT ACCOUNT 9**"); and

   x.   the Instagram account associated with the username "**harfordrd_13**", believed to belong to Darrell CARTER ("**SUBJECT ACCOUNT 10**");

b.   <u>Facebook Accounts (Attachment A-2):</u>

   i.   the Facebook associated with the user profile "**desean.johnson1**," believed to belong to Desean JOHNSON ("**SUBJECT ACCOUNT 11**");

   ii.   the Facebook account associated with the user profile "**harford.keedie**," believed to belong to Keishonne MOORE ("**SUBJECT ACCOUNT 12**");

   iii.   the Facebook account associated with the user profile "**harfordrd.mooda**," believed to belong to Davonta MCCROREY ("**SUBJECT ACCOUNT 13**");

   iv.   the Facebook account associated with user ID "**EastsideNeekneek**," believed to belong to Domaneek BRADLEY ("**SUBJECT ACCOUNT 14**");

   v.   the Facebook account associated with the user profile "**damiendp**," believed to belong to Damien PARKER ("**SUBJECT ACCOUNT 15**");

   vi.   the Facebook account associated with user profile "**cherryhill.mikkie**," believed to belong to Michael CHESTER ("**SUBJECT ACCOUNT 16**");

   vii.   the Facebook account associated with user profile "**harfordroad.richhomie**," believed to belong to Richard GRIER ("**SUBJECT ACCOUNT 17**"); and

   viii.   the Facebook account associated with user profile "**dcrelly.carter**", believed to belong to Darrell CARTER ("**SUBJECT ACCOUNT 18**").

c.   <u>Twitter Accounts (Attachment A-3):</u>

   i.   the Twitter account associated with user profile "**@BikerboyAnt_**", with User ID 2424736048, and believed to belong to Anthony DINKINS ("**SUBJECT ACCOUNT 19**");

   ii.   the Twitter account associated with user profile "**@harfordrd_neik**",

2

with User ID 2780303933, and believed to belong to Demetres MOORE ("**SUBJECT ACCOUNT 20**");

iii. the Twitter account associated with user profile "**@Cory_1600**", with User ID 2989141954, and believed to belong to Correy CAWTHORN ("**SUBJECT ACCOUNT 21**");

iv. the Twitter account associated with user profile "**@Dayonsavage**", with User ID 600294958, and believed to belong to Dayon JETER ("**SUBJECT ACCOUNT 22**");

v. the Twitter account associated with user profile "**@Damenace___**", with User ID 2386803676 and believed to belong to Desean JOHNSON ("**SUBJECT ACCOUNT 23**");

vi. the Twitter account associated with user profile "**@Keedie_1600**", with User ID 513425268 and believed to belong to Keishonne MOORE ("**SUBJECT ACCOUNT 24**");

vii. the Twitter account associated with user profile "**@bikerboypug**", with User ID 2894036135 and believed to belong to Tyquan FORD ("**SUBJECT ACCOUNT 25**");

viii. the Twitter account associated with user profile "**@zone18richhomie**", with User ID 2838912123 and believed to belong to Richard GRIER ("**SUBJECT ACCOUNT 26**");

ix. the Twitter account associated with user profile "**@HAZE__BA8Y**", with User ID 760224144055164928  and believed to belong to Quamonta Jackson ("**SUBJECT ACCOUNT 27**"); and

x. the Twitter account associated with user profile "**@bikerboy_mikkie**", with User ID 1697894318 and believed to belong to Michael CHESTER ("**SUBJECT ACCOUNT 28**").

2.  I submit there is probable cause to believe that the **SUBJECT ACCOUNTS** contain evidence of criminal activity, namely, racketeering conspiracy in violation of 18 U.S.C. § 1962(d), conspiracy to distribute controlled dangerous substances in violation of 21 U.S.C. § 846, distribution and possession with intent to distribute controlled dangerous substances in violation of 21 U.S.C. § 841, possession of a firearm and/or ammunition by a felon in violation of 18 U.S.C

§ 922(g), and discharging of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

3.    The information contained in this Affidavit is based upon my personal participation in this investigation, my training and experience, my review of documents and other evidence, and information obtained from other law enforcement officers, witnesses, cooperating sources, and other individuals.

4.    Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation.  Rather, I have set forth only those facts that I believe are necessary to establish probable cause.  I have not, however, excluded any information known to me that would defeat a determination of probable cause.

5.    The property to be searched is described in Attachments A-1 through A-3, and the items to be searched and seized are described more fully in Attachments B-1 through B-3.

**YOUR AFFIANT**

6.    I am a Special Agent with the ATF and currently assigned to the ATF Baltimore Field Division, Baltimore Group III. I have been employed by the ATF since 2014 and successfully completed the Criminal Investigator Training Program and Special Agent Basic Training Academies at the Federal Law Enforcement Training Center located in Glynco, Georgia.  I have conducted covert surveillance of narcotics and firearms traffickers, interviewed individuals involved in narcotics and firearms trafficking and criminal gangs, and participated in several Title III wiretap investigations as a case agent, monitor and member of surveillance teams.  Through my training and experience, I have become familiar with the ways in which individuals involved in drug trafficking and criminal gangs communicate with one another, including through the use

4

of social media platforms like Instagram, Facebook and Twitter. I have also become familiar with

the manner and means of drug trafficking, including the ways drugs are packaged, priced, and

distributed; the use of firearms to protect drug turf, enforce drug debts, and retaliate against rivals;

and the use of coded language to avoid detection by law enforcement.

## GENERAL INFORMATION REGARDING INSTAGRAM

7.      Instagram owns and operates a free access social networking website of the same

name that can be accessed at http://www.instagram.com. Instagram allows its users to create their

own profile pages, which can include a short biography, a photo of themselves and other

information. Users can access Instagram through the Instagram website or by using a special

electronic application, or "app," created by the company that allows users to access the service

through a mobile device such as a cellular telephone.

8.      Upon creating an Instagram account, an Instagram user must create a unique

Instagram username and an account password. This information is collected and maintained by

Instagram.

9.      Instagram asks users to provide basic identity and contact information upon

registration. They also allow users to provide additional identity information for their user profile.

This information may include the user's full name, e-mail addresses, and phone numbers, as well

as potentially other personal information provided directly by the user to Instagram. Once an

account is created, users may also adjust various privacy and account settings for the account on

Instagram. This information is collected and maintained by Instagram.

10.     Instagram permits users to posts photos to their profiles on Instagram and otherwise

share photos with others on Instagram, as well as certain other social-media services, including

Flickr, Facebook and Twitter. When posting or sharing a photo on Instagram, a user can add a

caption to the photo, can add various "tags" to the photo that can be used to search for the photo, can add location information to the photo, and can add other information to photo, as well as apply a variety of "filters" or other visual effects that can be used to modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram.  Users can also "like" photos.

11.     The Instagram "app" for mobile devices also allows users to send private messages to one or more people.  These messages can include text, photos, videos or locations.  Instagram calls this feature "Instagram Direct," and it is sometimes referred to colloquially as "direct messaging," or "dm" for short.

12.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public.  Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles.  This information is collected and maintained by Instagram.

13.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user.  Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user.

14.     Instagram allows users to post and share various types of user content, including photos, comments and other materials.  User content that is posted to Instagram or shared through Instagram is collected and maintained by Instagram.

15.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

6

16.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an application.  Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol (IP) address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access and other information.

17.     Instagram also collects and maintains "cookies," which are small text files that are placed on a user's computer or mobile device and that allow Instagram to identify the browsers or devices that access the service.

18.     Instagram also collects information on the particular devices used to access Instagram.  In particular, Instagram may record "device identifiers," which include data files and other information that may identity the particular electronic device that was used to access Instagram.

19.     Instagram also collects metadata associated with user content.  For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information comments on photos and other information.

20.     Instagram also may communicate with the user, by email or otherwise.  Instagram collects and maintains copies of communications between Instagram and the user.

## GENERAL INFORMATION REGARDING FACEBOOK

21.     Facebook is a free social networking website that provides a host of services to its users.  Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  Facebook users can post "status" updates about their whereabouts and actions, as well as links to

7

videos, photographs, articles, and other items available elsewhere on the Internet. A particular user's profile page includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links.

22.     Users can access Facebook through the Facebook website or by using a special electronic application, or "app," created by the company that allows users to access the service through a mobile device such as a cellular telephone.

23.     Facebook has a Photos application, where users can upload images and videos. Another feature of the Photos application is the ability to "tag" (*i.e.*, label) other Facebook users in a photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

24.     Facebook users can exchange private messages with one another. These messages, which are similar to email messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

25.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook also has a Marketplace feature, which allows users to post free classified ads, including items for sale, housing, jobs, and the like.

## GENERAL INFORMATION REGARDING TWITTER

26.     Twitter owns and operates a free-access social-networking website of the same name that can be accessed at http://www.twitter.com. Twitter allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and location information. Twitter also permits users create and read 140-character messages called "Tweets," and to restrict their "Tweets" to individuals whom they approve. These features are described in more detail below.

27.     Upon creating a Twitter account, a Twitter user must create a unique Twitter username and an account password, and the user may also select a different name of 20 characters or fewer to identify his or her Twitter account. The Twitter user may also change this username, password, and name without having to open a new Twitter account.

28.     Twitter asks users to provide basic identity and contact information, either during the registration process or thereafter. This information may include the user's full name, e-mail addresses, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers. For each user, Twitter may retain information about the date and time at which the user's profile was created, the date and time at which the account was created, and the Internet Protocol ("IP") address at the time of sign-up. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a given Twitter account.

29.     A Twitter user can post a personal photograph or image (also known as an "avatar") to his or her profile, and can also change the profile background or theme for his or her account page. In addition, Twitter users can post "bios" of 160 characters or fewer to their profile pages.

9

30.     Twitter also keeps IP logs for each user. These logs contain information about the user's logins to Twitter including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile.

31.     As discussed above, Twitter users can use their Twitter accounts to post "Tweets" of 140 characters or fewer. Each Tweet includes a timestamp that displays when the Tweet was posted to Twitter. Twitter users can also "favorite," "retweet," or reply to the Tweets of other users. In addition, when a Tweet includes a Twitter username, often preceded by the @ sign, Twitter designates that Tweet a "mention" of the identified user. In the "Connect" tab for each account, Twitter provides the user with a list of other users who have "favorited" or "retweeted" the user's own Tweets, as well as a list of all Tweets that include the user's username (*i.e.*, a list of all "mentions" and "replies" for that username).

32.     Twitter users can include photographs or images in their Tweets. Each Twitter account also is provided a user gallery that includes images that the user has shared on Twitter, including images uploaded by other services.

33.     Twitter users can also opt to include location data in their Tweets, which will reveal the users' locations at the time they post each Tweet. This "Tweet With Location" function is off by default, so Twitter users must opt in to the service. In addition, Twitter users may delete their past location data.

34.     When Twitter users want to post a Tweet that includes a link to a website, they can use Twitter's link service, which converts the longer website link into a shortened link that begins with http://t.co. This link service measures how many times a link has been clicked.

35.     A Twitter user can "follow" other Twitter users, which means subscribing to those users' Tweets and site updates. Each user profile page includes a list of the people who are

following that user (*i.e.*, the user's "followers" list) and a list of people whom that user follows (*i.e.*, the user's "following" list). Twitters users can "unfollow" users whom they previously followed, and they can also adjust the privacy settings for their profile so that their Tweets are visible only to the people whom they approve, rather than to the public (which is the default setting). A Twitter user can also group other Twitter users into "lists" that display on the right side of the user's home page on Twitter. Twitter also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting, based on the types of accounts that the user is already following and who those people follow.

36.     In addition to posting Tweets, a Twitter user can also send Direct Messages (DMs) to one of his or her followers. These messages are typically visible only to the sender and the recipient, and both the sender and the recipient have the power to delete the message from the inboxes of both users. As of January 2012, Twitter displayed only the last 100 DMs for a particular user, but older DMs are stored on Twitter's database.

37.     Twitter users can configure the settings for their Twitter accounts in numerous ways. For example, a Twitter user can configure his or her Twitter account to send updates to the user's mobile phone, and the user can also set up a "sleep time" during which Twitter updates will not be sent to the user's phone.

38.     Twitter includes a search function that enables its users to search all public Tweets for keywords, usernames, or subject, among other things. A Twitter user may save up to 25 past searches.

39.     Twitter users can connect their Twitter accounts to third-party websites and applications, which may grant these websites and applications access to the users' public Twitter profiles.

40.     If a Twitter user does not want to interact with another user on Twitter, the first user can "block" the second user from following his or her account.

41.     In some cases, Twitter users may communicate directly with Twitter about issues relating to their account, such as technical problems or complaints. Social-networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Twitter may also suspend a particular user for breaching Twitter's terms of service, during which time the Twitter user will be prevented from using Twitter's services.

42.     As explained herein, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Twitter user's account information, IP log, stored electronic communications, and other data retained by Twitter, can indicate who has used or controlled the Twitter account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, communications, "tweets" (status updates) and "tweeted" photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Twitter account at a relevant time.  Further, Twitter account activity can show how and when the account was accessed or used.  For example, as described herein, Twitter logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the

12

account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Twitter access, use, and events relating to the crime under investigation. Additionally, Twitter builds geo-location into some of its services. If enabled by the user, physical location is automatically added to "tweeted" communications. This geographic and timeline information may tend to either inculpate or exculpate the Twitter account owner. Last, Twitter account activity may provide relevant insight into the Twitter account owner's state of mind as it relates to the offense under investigation. For example, information on the Twitter account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a criminal plan) or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43. Therefore, the computers of Twitter are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Twitter, such as account access information, transaction information, and other account information.

## GENERAL INFORMATION REGARDING USE OF INSTAGRAM AND FACEBOOK BY INDIVIDUALS INVOLVED IN DRUG TRAFFICKING AND CRIMINAL GANGS

44. Based on my training and experience, I know that individuals involved in drug trafficking and criminal gangs frequently use social media platforms like Instagram, Facebook and Twitter to further their illegal activities. As described further above, Instagram, Facebook and Twitter allow users to communicate with one another via private messages, or to post comments to photographs and videos that are accessible to a wider audience consisting of the user's "friends" or "followers," or the broader public. Individuals who are involved in drug trafficking and criminal gangs often use these platforms to communicate privately with co-conspirators, or to communicate with wider audiences to advertise drugs for sale, spread news about murders and shootings, or

13

intimidate rivals. Records of these communications, including the communications themselves, are often stored by these social media platforms.

45.     Based on my training and experience, the social media accounts belonging to individuals involved in drug trafficking and criminal gangs frequently contain evidence of their criminal activities. For instance, drug traffickers and gang members commonly post photographs and videos of themselves associating with other gang members and co-conspirators (sometimes while displaying gang signs or wearing gang colors), or holding firearms or drugs. Records of these photographs and videos are often stored by these social media platforms. Furthermore, drug traffickers and gang members commonly install social media "apps" on their cell phones, which they carry with them virtually everywhere they go. When they access these "apps" from their cell phones on the go, location data stored by Instagram, Facebook and Twitter can be used as evidence of a target's whereabouts at a particular time.

## PROBABLE CAUSE

46.     On January 24, 2019, a federal grand jury returned an indictment charging sixteen members and associates of a violent narcotics-trafficking gang known as "CCC" with conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; distribution and possession with intent to distribute narcotics, in violation of 21 U.S.C. § 841; conspiracy to possess a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(o); and possession and discharging of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). *See United States v. Domaneek BRADLEY, et al.,*Criminal No. CCB-19-0036. The defendants include Domaneek BRADLEY, a/k/a "Neek," (the user of **SUBJECT ACCOUNTS 6** and **14**); Correy CAWTHORN, a/k/a "Fat Correy," (the user of **SUBJECT ACCOUNT 21**); Diontaye DEMORY, a/k/a "Grilla"; Anthony DINKINS, a/k/a "Ant," (the user of **SUBJECT ACCOUNT 19**); Richard GRIER, a/k/a

14

"Rich Homie," (the user of **SUBJECT ACCOUNTS 17** and **26**); Robert HARRIS-HOWELL a/k/a "Slim"; Quamonta JACKSON, a/k/a "Tay Tay" (the user of **SUBJECT ACCOUNTS 4** and **27**); Desean JOHNSON, a/k/a (the user of **SUBJECT ACCOUNTS 2, 11** and **23**); Brittany JONES; Davonta McCROREY, a/k/a "Mooda," (the user of **SUBJECT ACCOUNTS 5** and **13**); Demetres MOORE ("DMOORE"), (the user of **SUBJECT ACCOUNTS 1** and **20**); Kieshonne MOORE ("KMOORE"), (the user of **SUBJECT ACCOUNTS 3, 12** and **24**); Michael REAVES; Ronald STEVENSON, a/k/a "Peanut,"; Carlton THOMPSON; and Alonzo TUNNELL, a/k/a "Lo". The indictment resulted from an extensive investigation conducted by the ATF and the Baltimore City Police Department ("BPD"). During the course of this investigation, investigators have gathered evidence via controlled purchases of narcotics; seizures of firearms; search warrants executed on a variety of residences, vehicles, and cell phones; physical surveillance; a confidential source who was a former member of CCC but now works with ATF for compensation ("CS"), and social media accounts, among other means.

47.    The ATF is continuing to investigate this group for racketeering activity, drug trafficking activity, and illegal possession of firearms by the defendants and several unindicted co-conspirators, including Gary CREEK, a/k/a "Hov" (the user of **SUBJECT ACCOUNT 7**), Charles COLEMAN, (the user of **SUBJECT ACCOUNT 8**), Dayon JETER (the user of **SUBJECT ACCOUNTS 9** and **22**), Darrell CARTER (the user of **SUBJECT ACCOUNTS 10** and **18**), Damien PARKER (the user of **SUBJECT ACCOUNT 15**), Michael CHESTER (the user of **SUBJECT ACCOUNTS 16** and **28**), and Tyquan FORD (the user of **SUBJECT ACCOUNT 25**). Collectively, the users of the **SUBJECT ACCOUNTS** are referred to herein as the "**TARGET SUBJECTS**."

15

48. In investigating CCC's public social media accounts, investigators found music videos on YouTube featuring JOHNSON performing, including this still showing JOHNSON in all black wearing a CCC hat and pointing a gun at the camera. Other **TARGET**



Panda (H-Road Remix) x Boosie Da Menace

**SUBJECTS** are in the videos, including unindicted members JETER, CARTER, and CREEK. During all of the videos, the individuals are wearing shirts and hats with the "CCC" logo and simulating "trigger pulling" motions with their hands. In the YouTube video "1six double0" by G-Sterlo and Boosie Da Menace (an alias used by JOHNSON), JOHNSON simulated "trigger pulling" motions with his hand while rapping "1-6-double 0/this Harford Road/we let them blow" which refers to the CCC territory of the 1600 block of Harford Road, and that CCC members participate in shootings. Additionally, **SUBJECT ACCOUNTS 2** and **23** are attached to the video. The user image on **SUBJECT ACCOUNT 2** a picture of JOHNSON, and located within the biography of the account is a YouTube link to a music video featuring JOHNSON.[1]

49. Further searches on social media led to the discovery of the account owned by Devante MONROE, "harfordrdfinley", who agents believe was a member of CCC. On March 7, 2017, the public Instagram account posted the image and caption below:

---

[1] Several other YouTube videos posted by JOHNSON include songs referencing the non-fatal shooting of CCC members and the ability for CCC to retaliate.



Agents were able to identify the residence as 1660 Normal Avenue, which is within CCC territory. The individuals pictured from right to left: DMOORE, MCCROREY, KMOORE, an unidentified male, GRIER, Kevin RICHARDSON (holding a stack of currency), MONROE, Tyrone TUCKER-JONES, and PARKER. Agents believe all of the named individuals are CCC members (four of which have been indicted). Agents believe that the caption, "We don't do attempts your bitch ass just got lucky," is referencing the violent acts of the group. Specifically, that the group was involved in a non-fatal shooting, the "attempts," but their intent was to commit a homicide. Five months after this Instagram post was uploaded, MONROE was shot and killed by "friendly fire" while participating with CCC in shooting of a rival drug crew.

50.   As discussed further below, the investigation has revealed that the **TARGET SUBJECTS** frequently post photographs, videos, and comments to their social media accounts that constitute evidence of racketeering conspiracy, drug trafficking conspiracy, and illegal possession of firearms.

17

**Domaneek BRADLEY and SUBJECT ACCOUNTS 6 and 14**

51.     BRADLEY is an indicted member of CCC in CCB-19-0036. Investigators believe that BRADLEY was the user of the Instagram account bearing username "**z13neekneek**" as of January 29, 2019 (**SUBJECT ACCOUNT 6**).[2] Investigators believe this account belongs to BRADLEY because first, the biographic photograph for **SUBJECT ACCOUNT 6** is of BRADLEY and a non-indicted gang member; second, "Neek" is a known alias for BRADLEY. In addition, there is also a YouTube link to a video featuring CREEK and other CCC members.

52.     Investigators cannot see the **SUBJECT ACCOUNT 6** because it is a private account.  However, investigators believe the account is still active because they submitted preservation request to Instagram for the account pursuant to 18 U.S.C. § 2703(f) on July 30, 2019. Investigators know based on their experience with Instagram, that if the has been deleted, a preservation request will not be accepted.[3]

53.     Investigators also believe that BRADLEY is the user of the Facebook account bearing username "**EastsideNeekneek**" (**SUBJECT ACCOUNT 14**). A picture of BRADLEY is the profile picture associated with **SUBJECT ACCOUNT 14.** The banner picture is of BRADLEY, JACKSON and STEVENSON JR. throwing money into the air. The account is semi-private; those photographs publically available are of BRADLEY and other CCC members. Investigators believe **SUBJECT ACCOUNT 14** is still active. Investigators submitted a preservation request pursuant to 18 U.S.C. § 2703(f) on May 22, 2019.[4]

---

[2] Because Instagram usernames are not static, Instagram requests that search warrant applications specify both the username and the date on which the account was viewed.  Facebook usernames, on the other hand, are static, and therefore the view date is not required.

[3] This reasoning holds for all of the Instagram accounts; if the investigators can file a preservation request, then the account has not been deleted.

[4] All preservation letters referenced in this Affidavit were made pursuant to 18 U.S.C. § 2703(f).

**Correy CAWTHORN and SUBJECT ACCOUNT 21**

54.     CAWTHORN is an indicted member of CCC in CCB-19-0036 who was a fugitive until June 2019. Investigators believe CAWTHORN was the user of Twitter account bearing username "@Cory_1600" (**SUBJECT ACCOUNT 21**). Investigators believe the "1600" referenced in the handle is to the 1600 block of Normal Avenue where CCC members frequently gathered and sold drugs, including several controlled purchases made during the investigation. The profile picture for the account is a photograph of CAWTHORN; in fact, the account features numerous photographs of CAWTHORN with other members and associates of CCC.

55.     On June 2, 2019, CAWTHORN posted a video to **SUBJECT ACCOUNT 21** that showed him talking about being wanted by the "feds" as CAWTHORN was a fugitive at the time. The video included the tag "Feds want me so bad but they don't have a clue. They lost." The same post included other statements indicative of criminal activity, including, "ain't no bitch on this earth going make me put this 40 down on God." Investigators believe "40" refers to a .40 caliber handgun.  CAWTHORN also references the death of "Finley" who investigators believe was the nickname of MONROE, referenced *supra,* as a member of CCC killed during friendly fire.

56.     Investigators believe that CAWTHORN's account is still active; the last post on **SUBJECT ACCOUNT 21** was on July 25, 2019.[5] Agents submitted preservation requests on May 22, 2019.

**Anthony DINKINS and SUBJECT ACCOUNT 19**

57.     DINKINS is an indicted member of CCC in CCB-19-0036. Investigators believe DINKINS is on video outside the carry-out on Harford Road (CCC territory) firing at a rival gang

---

[5] CAWTHORN was arrested and incarcerated on the pending indictment (CCB-19-0036) on May 31, 2019.  However, agents believe CAWTHORN may be able to access/post on **SUBJECT ACCOUNT 21** from his place of incarceration.

member, S.J., on April 27, 2018. Investigators also believe DINKINS was the user of the Twitter account bearing username "**@BikerboyAnt_**" (**SUBJECT ACCOUNT 19**). The profile picture associated with **SUBJECT ACCOUNT 19** is a photograph of DINKINS. On July 26, 2017, DINKINS posted a photo and video of himself and CAWTHORN with the caption, "We going get money for life". On September 9, 2017, DINKINS posted a photo of himself referencing CCC, specifically, "the one who ran his bandz up but still be on the same savage shit CCC".

58.     Investigators believe that **SUBJECT ACCOUNT 19** is still active as they can still review the posts.  Investigators submitted a preservation request on May 22, 2019.

**Gary CREEK and SUBJECT ACCOUNT 7**

59.     Investigators believe CREEK purports himself to a "founding member" of CCC based on CREEK's public social media accounts. Specifically, they believe CREEK was the user of the Instagram account bearing username "**hov_a_realnigga**" as of July 31, 2019 (**SUBJECT ACCOUNT 7**). The profile picture associated with **SUBJECT ACCOUNT 7** is CREEK. The CS told investigators that CREEK's nickname is "Hov" and that he supplies narcotics to CCC. The most recent post on the account was on July 31, 2019 stating, "#triple_c_movement".

60.     **SUBJECT ACCOUNT 7**'s biographic quote is "CEO and founder of TripleCsDaMovement". On March 28, 2019, there is a post of BPD arresting CREEK. Other posts include CCC jewelry, money, and marijuana posts. During the course of the investigation, undercover officers purchased marijuana from CCC members in and around the 1600 block of Normal Avenue on CCC territory.

**Demetrius MOORE and SUBJECT ACCOUNTS 1 and 20**

61.     DMOORE is an indicted member of CCC in CCB-19-0036 and is a fugitive. Investigators believe that DMOORE was the user of Instagram account bearing username

"**harfordroad__neik**" as of July 31, 2019 (**SUBJECT ACCOUNT 1**). "Neik" is a known alias

of DMOORE, and the profile pictures associated with **SUBJECT ACCOUNT 1** is a photograph

of DMOORE; the biographic quote associated with the account is "Harford road raised, normal

ave till da grave, 1600 block". Investigators know that the 1600 blocks of Harford Road, Normal

Ave and Cliftview Avenue are CCC territory because they frequently saw CCC members and

associates in these areas throughout the course of the investigation, including when conducting

controlled purchases from CCC members. Investigators believe **SUBJECT ACCOUNT 1** is still

active, although the posts to the account are private; a preservation request was filed on July 31,

2019.

62.    Investigators believe that DMOORE is the user of the Twitter account bearing

username "**@harfordrd_neik**" (**SUBJECT ACCOUNT 20**). As previously stated, "Neik" is a

known alias of DMOORE and the profile picture is of DMOORE. DMOORE recently posted a

photograph of himself implying that he was not going to jail anytime soon. Specifically, on July

20, 2019, a post read, "keep all my pencils sharpened cuz I ain't tryna see da pen!!" Agents believe

the reference to "da pen" is slang for jail. **SUBJECT ACCOUNT 20** is a public account and still

active; the most recent post was on July 31, 2019.

**Desean JOHNSON and SUBJECT ACCOUNTS 2, 11 and 23**

63.    JOHNSON is an indicted CCC member in CCB-19-0036. Investigators previously

identified JOHNSON as the user of **SUBJECT ACCOUNTS 2** and **23** (as described *supra*).

Investigators believe JOHNSON is the user of the Facebook account bearing user name

"**desean.johnson1**" (**SUBJECT ACCOUNT 11**). This account is semi-private and includes the

biographic picture of JOHNSON and a non-indicted gang member. Publically available

photographs include JOHNSON with other CCC members to include FORD (user of **SUBJECT**

21

**ACCOUNT 25**). Additionally, there is a photo of JOHNSON posted on September 29, 2018, with the caption, "I jump out at ya house I don't shoot from the corner" with CCC posted after it and #FreedaGang. In the photo, JOHNSON is also simulating a trigger pulling motion.  **SUBJECT ACCOUNT 11** is still active; a preservation request was filed on May 22, 2019.

**Keishonne MOORE and SUBJECT ACCOUNTS 3, 12 and 24**

64.     KMOORE is an indicted member of CCC in CCB-19-0036. Investigators believe that KMOORE is the user of the Twitter account bearing username "**@Keedie_1600**" as of February 2, 2019 (**SUBJECT ACCOUNT 24**). "Keedie" is a known alias of KMOORE, and there are numerous photographs posted to **SUBJECT ACCOUNT 24** featuring KMOORE. The biographic quote of this account is #TripleCsDaMovement. There is also a post on **SUBJECT ACCOUNT 24** from February 3, 2019, of JOHNSON's Instagram Account (**SUBJECT ACCOUNT 2**) featuring a picture of JOHNSON and KMOORE. KMOORE is wearing a "CCC" shirt with the caption, "Free me Sons". Investigators believe this is a reference to JOHNSON's arrest on federal charges prior to the post.

65.     Investigators believe that KMOORE is also the user of the Facebook account bearing username "**Harford.keedie**" (**SUBJECT ACCOUNT 12**).  The profile picture associated with **SUBJECT ACCOUNT 12** is a photograph of KMOORE.  This is a semi-private account but older public postings promote #TripleCsDaMovement and there are multiple photos of KMOORE and other CCC members.

66.     Investigators believe that KMOORE is the user of Instagram account bearing username "**@keedie_1600**" as of January 29, 2019 (**SUBJECT ACCOUNT 3**). "Keedie" is a known alias of KMOORE, and the profile pictures associated with **SUBJECT ACCOUNT 3** is

22

KMOORE; the biographic quote associated with the account is "#TripleCsDaMovement" with a link to a YouTube video of JOHNSON. The account is private.

67.     **SUBJECT ACCOUNTS 3, 12** and **24** are still active. Investigators filed preservation requests on May 22, 2019 (**3 and 12**), and July 30, 2019 (**24**).

**Quamonta JACKSON and SUBJECT ACCOUNTS 4 and 27**

68.     JACKSON is an indicted member of CCC in CCB-19-0036. Investigators believe that JACKSON is the user of Instagram account bearing username "**16oo_tayy**" as of January 29, 2019 (**SUBJECT ACCOUNT 4**).  "Tay" is a known alias of JACKSON, and the profile picture associated with **SUBJECT ACCOUNT 4** is JACKSON. Agents believe the reference to "16oo" in the handle is a reference to the 1600 blocks of Normal Avenue, which is in CCC territory. This is a private account.

69.     Investigators believe JACKSON is the user of the Twitter account bearing username "**@HAZE__BA8Y**" (**SUBJECT ACCOUNT 27**). "Haze" is the name of the marijuana CCC sold at Harford Road and Cliftview Road (in CCC territory). The account is private but the banner picture is of CAWTHORN, BRADLEY and other CCC members. JACKSON and MCCROREY are brothers.

70.     **SUBJECT ACCOUNTS 4** and **27** are still active; investigators filed preservation requests on July 30. 2019.

**Davonta MCCROREY and SUBJECT ACCOUNTS 5 and 13**

71.     MCCROREY is an indicted member of CCC in CCB-19-0036. Investigators believe that MCCROREY is the user of the Instagram account bearing username "**mooda_theshooota**"    as    of    January    29,    2019    (**SUBJECT    ACCOUNT    5**).

"Mooda" is a known alias for MCCROREY, and the profile picture associated with **SUBJECT ACCOUNT 5** is MCCROREY with MONROE.

72.     Investigators believe that MCCROREY is also the user of the Facebook account bearing username "**harfordrd.mooda**" (**SUBJECT ACCOUNT 13**). The profile picture associated with **SUBJECT ACCOUNT 13** is the same used for **SUBJECT ACCOUNT 5**. The cover photo for the account is taken outside the same carry-out where GRIER shot a rival gang member on April 27, 2018. The photo includes BRADLEY, STEVENSON, Jr., MCCROREY and GRIER in a CCC hat.

73.     **SUBJECT ACCOUNTS 5** and **13** are still active and private; preservation requests were filed July 30, 2019 and May 22, 2019, respectively.

### Charles COLEMAN and SUBJECT ACCOUNT 8

74.     Investigators believe that COLEMAN is an associate of CAWTHORN and may be a member of CCC. The CS told investigators that COLEMAN shot him, causing the CS to withdraw from CCC. Investigators believe that COLEMAN was the user of the Instagram account bearing username "**@chuck_1600**" as of July 30, 2019 (**SUBJECT ACCOUNT 8**). "Chuck" is a known nickname of COLEMAN. The biographic picture is of COLEMAN. COLEMAN's biographic quote references Harford Road and Normal Avenue, which investigators know is CCC territory. The post reads, "Grind hard sine hard this is the only life I know keep your circle tight cause niggas aint right". The post also includes several emojis including a gun pointed to a police officer's head, drugs and a money bag. **SUBJECT ACCOUNT 8** is still active; a preservation request was filed on July 30, 2019.

**Dayon JETER and SUBJECT ACCOUNTS 9 and 22**

75.     Investigators believe JETER and other members of CCC killed a man during a dice game on CCC territory on April 21, 2018. Ballistic evidence links this murder to other acts of violence in the area and to other violent acts done by known CCC members. Investigators believe the Instagram account bearing username "**dayonsavage**" as of July 30, 2019 (**SUBJECT ACCOUNT 9**). The profile pictures associated with the account is of JETER, and JETER is known by the alias "Savage". The tagline for **SUBJECT ACCOUNT 9** is quote referencing CCC. There is also a YouTube link to a rap video featuring JETER holding a firearm and wearing a CCC necklace. Investigators believe that **SUBJECT ACCOUNT 9** is still active and is a public account.

76.     Investigators believe JETER is the user of the Twitter account bearing username "**@Dayonsavage**" (**SUBJECT ACCOUNT 22**). This is an open account with a biographic picture of JETER. The account also has a YouTube link to the same video referenced in paragraph 74. Specifically, JETER goes by the stage name of "Dayon Savage". In the video, JETER raps while pointing guns at the camera in. CCC member CARTER is also in the video holding a firearm. At the end of the video members say "CCC" and "Free Ant, Free Mikkie, Free C-Moe" (investigators believe this is a reference to arrested CCC members DINKINS, CHESTER and CAWTHORN, respectively). At the end of the video **SUBJECT ACCOUNTS 9 and 22** are linked. **SUBJECT ACCOUNT 22** is still active; this is a public account.

**Darrell CARTER and SUBJECT ACCOUNTS 10 and 18**

77.     Investigators believe that CARTER is an associate of CCC because he appears in JOHNSON's rap videos and investigators viewed photographs of other CCC members with CARTER. They believe he is the user of the Instagram account bearing username "**harfordrd_13**" as of July 30, 2019 (**SUBJECT ACCOUNT 10**). The profile picture associated with the account

appears to be CARTER. The biographic quote is "HRoad Baby, Finley brother". "Finley" is the aforementioned MONROE, a CCC member who died August 8, 2017. Investigators believe that "HRoad" is a reference to Harford Road in CCC territory. Investigators believe that **SUBJECT ACCOUNT 10** is still active and private; a preservation request on July 30, 2019.

78.     Investigators believe that CARTER is also the user of the Facebook account bearing username "**dcrelly.carter**" (**SUBJECT ACCOUNT 18**). The profile picture associated with **SUBJECT ACCOUNT 18** is CARTER.  The banner picture shot is an Instagram picture of CARTER and JACKSON; in addition, **SUBJECT ACCOUNT 10** is referenced on **SUBJECT ACCOUNT 18**. Other photos on the account include those of CARTER, MCCROREY, JOHNSON and CAWTHORN.  This is a semi-private account which investigators believe is still active; investigators filed a preservation request on July 30, 2019.

**Damien PARKER and SUBJECT ACCOUNT 15**

79.     The CS told investigators that PARKER is a member of CCC. Investigators believe that PARKER was the user of the Facebook account bearing username "**damiendp**" (**SUBJECT ACCOUNT 15**). The biographic picture is of PARKER and BRADLEY. Other public photos include PARKER with DMOORE, COLEMAN, and CARTER; in addition there is a public photo of CAWTHORN and JOHNSON wearing CCC clothing. **SUBJECT ACCOUNT 15** is still active and a preservation request was issued on May 22, 2019. Investigators viewed posts on this account as recently as July 30, 2019.

**Michael CHESTER and SUBJECT ACCOUNTS 16 and 28**

80.     CHESTER is an unindicted member of CCC who investigators believe is on video when DINKINS shoots a rival drug dealer on April 27, 2018. CHESTER is also a suspect in a homicide on April 21, 2018, in CCC territory. Ballistic evidence connect the firearm used in the

April 21, 2018, murder to several other shootings in the area. Investigators believe that CHESTER is the user of the Facebook account bearing the username "**cherryhill.mikkie**" (**SUBJECT ACCOUNT 16**). The profile picture associated with the account is a photograph of CHESTER. The account is semi-private and includes other public photos of CHESTER.

81.     Investigators believe CHESTER is the user of the Twitter account bearing username "**@bikerboy_mikkie**" (**SUBJECT ACCOUNT 28**). Investigators believe, based on searches of CCC members cellphones seized during this investigation, that CHESTER's nickname is "Mikkie". The banner and biographic picture are of CHESTER. On April 21, 2019, there is a posted photograph of CHESTER and CAWTHORN. The account also retweeted posts from an April 21, 2019 post from **SUBJECT ACCOUNT 21** (CAWTHORN) stating "Us street niggas really out her dodging bullets everyday". Investigators believe that **SUBJECT ACCOUNTS 16** and **28** are still active; they are public accounts; a preservation request for **SUBJECT ACCOUNT 16** was filed on July 30, 2019.

**Richard GRIER and SUBJECT ACCOUNTS 17 and 26**

82.     GRIER is an indicted member of CCC in CCB-19-0036. Investigators believe that GRIER is the user of the Facebook account bearing user name "**harfordroad.richhomie**" (**SUBJECT ACCOUNT 17**). Investigators know that "Rich Homie" is an alias for GRIER. The account is semi-private and includes a biographic picture of GRIER. The accompanying quote is "CCC TripleC'sDaMovement".  In one photograph, investigators saw a post to MONROE's Instagram account and pictures of MOORE, TUCKER-JONES, PARKER, and other CCC members.

83.     Investigators believe GRIER is the user of the Twitter account bearing username "**@zone18richhomie**" (**SUBJECT ACCOUNT 26**). Investigators believe that "Rich Homie" is

a nickname for GRIER. Both the biographic picture and quote reference GRIER and CCC, specifically, "CCC TripleC'sDaMovement". There are also references to the 1600 block and emojis of guns. Investigators believe that **SUBJECT ACCOUNTS 17** and **26** are still active; investigators filed a preservation request with **SUBJECT ACCOUNT 17** on July 30, 2019.

**Tyquan FORD and SUBJECT ACCOUNT 25**

84.     Investigators believe that FORD is a member of CCC and the user of the Twitter account bearing username "**@bikerboypug**" (**SUBJECT ACCOUNT 25**). Investigators saw a photograph of FORD and CAWTHORN posted on the account (on April 5, 2019; now deleted). Investigators know "Pug" is a nickname for FORD based on a review of DINKINS's cellphone in which he asks "Pug" to send him a photo of himself ("Pug") and DINKINS. In response, "Pug" sent DINKINS a photo which investigators identified as FORD and DINKINS. On that same phone, investigators also located a photo of "Pug" and DINKINS flashing a firearm and money; additionally, there are references to "C-Moe", a known alias for CAWTHORN, in texts between "Pug" (FORD) and DINKINS. The account is still active.

**CONCLUSION**

85.     Based upon the information set forth in this Affidavit, there is probable cause to believe that the **SUBJECT ACCOUNTS** contain evidence of violations of 18 U.S.C. § 1962(d), 21 U.S.C. § 841, 21 U.S.C. § 846, 18 U.S.C. § 922(g), and 18 U.S.C. § 924(c), by the **TARGET SUBJECTS** and other known and unknown co-conspirators. Specifically, the **SUBJECT ACCOUNTS** may contain evidence (*e.g.*, saved messages, comments, photographs, or location data) of the **TARGET SUBJECTS** communicating with other members and associates of CCC, making references to gang membership, possessing firearms, or engaging in drug transactions.

86.     I further request that the Court order that all papers in support of the application,

including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing investigation that is not public. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

87.     WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue search warrants for the **SUBJECT ACCOUNTS**, and authorize the search and the seizure of the items described in Attachments A-1 through A-3, for the purpose of identifying electronically stored data particularly described in Attachment B-1 through B-3.


Respectfully submitted,


Lindsay Erbe
Special Agent, ATF


Sworn to before me this 2nd day of August 2019.


The Honorable Stephanie A. Gallagher
United States Magistrate Judge


29

**ATTACHMENT A1—INSTAGRAM**

**Property to Be Searched**

This warrant applies to information and records that are stored at premises owned, maintained, controlled, or operated by Instagram, a social-networking company headquartered at 1601 Willow Road, Menlo Park, California, 94025, pertaining to the following Instagram accounts from January 1, 2017 through the present date:

    i.    "**harfordroad__neik**", believed to belong to Demetres MOORE ("**SUBJECT ACCOUNT 1**");

    ii.    "**___damenace**", believed to belong to Desean JOHNSON ("**SUBJECT ACCOUNT 2**");

    iii.    "**keedie_1600**", believed to belong to Keishonne MOORE ("**SUBJECT ACCOUNT 3**");

    iv.    "**16oo_tayy**", believed to belong to Quamonta JACKSON ("**SUBJECT ACCOUNT 54**");

    v.    "**mooda_theshooota**", believed to belong to Davonta MCCROREY ("**SUBJECT ACCOUNT 5**");

    vi.    "**z13neekneek**", believed to belong to Domaneek BRADLEY ("**SUBJECT ACCOUNT 6**");

    vii.    "**hov_a_realnigga**", believed to belong to Gary CREEK ("**SUBJECT ACCOUNT 7**");

    viii.    "**chuck_1600**", believed to be used by Charles COLEMAN ("**SUBJECT ACCOUNT 8**");

    ix.    "**dayonsavage**", believed to belong to Dayon JETER ("**SUBJECT ACCOUNT 9**"); and

    x.    "**harfordrd_13**", believed to belong to Darrell CARTER ("**SUBJECT ACCOUNT 10**");

## ATTACHMENT B1—INSTAGRAM

### Items to Be Seized

i.      **Information to be disclosed by Instagram**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of Instagram including any messages, records, files, logs, images, videos, or information that have been deleted but are still available to Instagram or have been preserved pursuant to preservation requests made under 18 U.S.C. § 2703(f), Instagram is required to disclose the following information to the government for each account or identifier listed in Attachment A-1 from January 1, 2017 through the present date:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, email addresses, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

b.      All information automatically recorded by Instagram from a user's Device, including its software and all activity using the Services, to include, but not limited to:  a utilizing device's IP address, browser type, web page visited immediately prior to connecting to the Instagram website, all information searched for on the Instagram website, locale preferences, identification numbers associated with connecting devices, information regarding a user's mobile carrier, and configuration information;

c.      The types of services utilized by the user;

d.      All files and records or other information stored by an individual using the account, including all images, videos, documents, communications and other files uploaded, downloaded or accessed using the Instagram service, including all available metadata concerning these files;

e.      All records pertaining to communications between Instagram and any person regarding the account, including contacts with support services and records of actions taken;

f.      All data and information associated with the personal page and/or profile page, including photographs, videos, audio files, lists of personal interests and preferences, including hashtags;

g.      A complete list of all users who are followed by the accounts listed in Attachment A1, and a list of all users who are following the accounts listed in Attachment A-1, including every user name, user identification number, corresponding email address, physical address, and date the user joined Instagram;

31

h.      All photos, videos, messages and other files to which the accounts in Attachment A1 have been added, tagged, or associated, including any hashtags or captions associated with each photo, a list of all user who "liked" each photo, a list of each user who commented on each photo, and the substance of each comment regarding each photo;

i.      All photos, videos, messages and other files posted, screen shot, or stored by the accounts listed in Attachment A-1, including any hashtags or captions associated with each photo, a list of all users who "liked" each photo, the usernames of any other user added to or tagged in each photo, a list of each user who commented on each photo, and the substance of any comment regarding each photo;

## ii.      Information to be seized by the government

All information described above in Section 1 that constitutes evidence of racketeering conspiracy in violation of 18 U.S.C. § 1962(d), conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, distribution and possession with intent to distribute narcotics in violation of 21 U.S.C. § 841, possession of a firearm and/or ammunition by a felon in violation of 18 U.S.C. § 922(g), and discharging of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), from January 1, 2017 through the present date.

## iii.      Government procedures for warrant execution

With respect to the search of the information provided pursuant to this warrant by the above-referenced provider, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically-stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

32