IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 1:19Cr00036-CCB-17** |
| | : | |
| **GARY CREEK** | : | |
| | : | |
| **Defendant.** | : | |

---

**SUPPLEMENT TO MOTION TO SUPPRESS FRUITS OF PHYSICAL SEARCH OF 1315 HOMESTEAD STREET**

Defendant Gary Creek, through counsel, respectfully files this supplement to his motion to suppress the fruits of the search of 1315 Homestead Street, Baltimore, MD, 21218, pursuant to the Fourth Amendment to the United States Constitution. ECF 490. In support of the motion, Mr. Creek states as follows:

## INTRODUCTION

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996). The search warrant at issue here authorized a major incursion into that privacy interest, and violated Mr. Creek's Fourth Amendment protection against unreasonable searches and seizures because it (1) lacked probable cause; (2) was overbroad, and (3) lacked a sufficient nexus between the place to be searched and the alleged criminal conduct. Furthermore, the good faith exception does not apply here because the officers' reliance on the affidavit supporting the warrant was not objectively reasonable. The Court should therefore suppress the fruits of the search conducted at 1315 Homestead Street.

## FACTUAL BACKGROUND

The government provided defense counsel a copy of the state search warrant for the residence at 1315 Homestead Street, Baltimore, MD 21218 on September 23, 2020.

Police Detective Joshua Cornelius of the Baltimore Police Department ("BPD") applied for a search warrant of this residence, and on January 30, 2019, the Honorable Halee Weinstein, of the Baltimore City District Court, issued a search warrant for the above address. *See* Exhibit 1--Affidavit and Search Warrant.

In his affidavit, Detective Cornelius alleged that there was probable cause that Mr. Creek was engaged in drug distribution based on information provided by confidential sources, residents of Baltimore, and social media investigations. Ex. 1 at 8. Detective Cornelius summarized the information allegedly provided by a confidential informant (CI-1) that Mr. Creek is engaged in drug distribution and other crimes. *Id*. at 9-10. Detective Cornelius then summarized information allegedly provided by a "concerned citizen" (CC-1) to the effect that Mr. Creek has three handguns and large amounts of controlled substances in the residence at 1315 Homestead St. *Id*. at 10. The affidavit then summarized content that police observed on what is alleged to be Mr. Creek's Instagram account, and attached several photos of marijuana. *Id*. at 11, 15-19.

Based on the foregoing information, Detective Cornelius sought and obtained a warrant to search the residence, and to seize, *inter alia*:

(1) Books, records, and other documents that identify other co-conspirators;

(2) Telephones, pagers, and personal data assistants and the contents thereof;

(3) Documents and other records relating to state court proceedings involving other co-conspirators;

(4) Photographs;

(5) Records of travel;

(6) Identification documents; and

(7) Safes and other storage containers.

*Id*. at 14.

The search warrant was executed on February 7, 2019. On information and belief, the government intends to introduce at trial the fruits of the search, to include controlled substances and ammunition, that police allegedly seized from the residence.

## ARGUMENT

### I. APPLICABLE LAW.

The Fourth Amendment forbids all "unreasonable" searches and seizures. U.S. Const. amend. IV. A search and seizure is unreasonable for Fourth Amendment purposes when conducted either: (i) without a valid warrant or circumstances establishing one of the well-defined exceptions to the warrant requirement, *see Katz v. United States,* 389 U.S. 347, 357 (1967) (a warrant is required before every search or seizure, "subject only to a few specifically established and well-delineated exceptions"); or (ii) pursuant to a valid warrant, but in a manner that is unreasonable or otherwise not authorized by the warrant, *see Andresen v. Maryland,* 427 U.S. 463, 480-81 (1976) (warrant authorized officers to search only for evidence of crimes particularized in the warrant).

#### A. The probable cause needed for a search warrant is different from the probable cause needed for an arrest warrant.

For a warrant to be valid, it must be supported by probable cause. Importantly, the probable cause needed for a search warrant differs from the probable cause for an arrest warrant. *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017) (citing *Steagald v. United States*, 451 U.S. 204, 212-13 (1981)). "An arrest warrant rests on probable cause to believe that the suspect committed an offense . . . A search warrant, by contrast, is grounded in "probable cause to believe that the legitimate object of a search is located in a particular place." *Id.* (internal citations omitted).

Thus, "probable cause to arrest a person will not itself justify a warrant to search [that person's] property." *Id.*

**B. A search warrant must particularly describe the place to be searched and the things to be seized.**

A valid search warrant must indicate with particularity both "the place to be searched, and the persons or things to be seized." U.S. Const. amend IV; *Groh v. Ramirez,* 540 U.S. 551, 568 (2004) (warrant that fails to describe on its face the items to be seized is invalid); *Marron v. United States,* 275 U.S. 192, 196 (1927) (the description of the items seized must be sufficiently specific that "nothing is left to the discretion of the officer executing the warrant."); *United States v. Robinson,* 275 F.3d 371, 381 (4th Cir. 2001) (the particularity requirement of a search warrant protects a person against "a general, exploratory rummaging in a person's belongings."). This requirement prevents warrants based on "loose, vague or doubtful bases of fact." *Griffith*, 867 F.3d at 1275 (quoting *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931)).

**C. Probable cause is evaluated solely based on the information presented to the magistrate.**

In deciding whether there was sufficient probable cause to issue a search warrant, courts look only to the information presented to the judicial officer issuing the warrant, and "may not go beyond the information actually presented to the magistrate during the warrant application process." *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018).

**D. The items to be seized pursuant to a search warrant must bear a sufficient nexus to the crime under investigation.**

A third requirement for a valid search warrant is that the items sought to be seized must bear a logical relationship to the crime under investigation. This is called the "nexus" requirement. *See Warden*, *Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) ("There must, of course, be a nexus...between the item to be seized and criminal behavior.")

In *United States v. Lyles*, 910 F.3d 787 (4th Cir. 2018), the Fourth Circuit held that a search warrant was invalid, in part because the search warrant authorized the seizure of cell phones, but the crime under investigation was marijuana possession. *See id.* at 795 ("the warrant application lacked any nexus between cell phones and marijuana possession.").

**E. Evidence obtained from an invalid search warrant must be excluded, subject to the "good faith" exception.**

Evidence seized pursuant to an invalid warrant is normally subject to the exclusionary rule. However, in some circumstances, the government may nevertheless admit such evidence pursuant to the "good faith" exception. *United States v. Leon*, 468 U.S. 897, 920 (1984). However, the good faith exception does not apply if the warrant was facially deficient, such that it failed to identify the items to be seized or place to be searched, or if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 923.

The good faith standard is an objective standard. The subjective good faith of the executing officer is irrelevant. *See Herring v. United States*, 555 U.S. 135, 145 (2009) ("our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances."). In applying the good faith standard, however, courts must take into account the officer's knowledge and experience. *Id.* ("These circumstances frequently include a particular officer's knowledge and experience.") The officer's subjective good faith or bad faith is irrelevant to this analysis. *Id.*

The burden of proving good faith is on the prosecution. *See United States v. Voustianiouk*, 685 F.3d 206, 215 (2d Cir. 2012); *United States v. Corral–Corral*, 899 F.2d 927, 932 (10th Cir. 1990); *United States v. Michaelian,* 803 F.2d 1042, 1048 (9th Cir. 1986); *United States v. Maggitt*, 778 F.2d 1029, 1034 (5th Cir. 1985); see also *Leon*, 468 U.S. at 924 ("When officers have acted

pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time.").

In *Lyles*, *supra*, the Fourth Circuit held that the good faith exception did not apply where no objectively reasonable officer could have believed that the warrant was supported by probable cause, even though the warrant was reviewed by a supervisor and prosecuting attorney prior to its approval by a magistrate judge. *See id.* at 796.

Similarly, in *Griffith*, the D.C. Circuit found that the good faith exception did not apply where:

> "The affidavit fell short to an extent precluding good-faith reliance on the warrant. As explained, the government's theory of probable cause to search the apartment runs as follows: (i) Griffith might own a cell phone; (ii) if so, his phone might be found in the residence; and (iii) if so, the phone might retain incriminating communications or other information about a crime committed more than one year earlier. Whatever may be the reasonableness of any of those inferences standing on its own, demonstrating probable cause required adequately establishing all three in combination. The affidavit did not approach doing so. It provided no explanation at all of whether Griffith might own a phone or whether any such phone might be in his home. And with regard to whether any phone would retain any incriminating information about a shooting occurring more than one year beforehand, it observed only that gang members often stay in contact about their activities."

*United States v. Griffith*, 867 F.3d 1265, 1278 (D.C. Cir. 2017)

## II. THE SEARCH WARRANT WAS INVALID.

The search warrant was invalid because it lacked probable cause, was overbroad, and permitted the seizure of items that lacked a sufficient nexus to the alleged criminal conduct.

### A. The warrant lacked probable cause.

As noted previously, in order for a search warrant to establish probable cause, there must be reason to believe that the particular items sought to be seized will be found in the location(s) to be searched. Here, there was a lack of probable cause to believe that numerous items in the warrant

either existed or would be found in the location to be searched, namely, the shared residence where Mr. Creek and numerous other individuals lived.

The case of *United States v. Griffith* from the D.C. Circuit is directly on point. In *Griffith*, police officers suspected Griffith of being the getaway driver for a gang-related shooting, and obtained a warrant to search Griffith's home for, among other things, "any cell phones and electronic devices." 867 F.3d 1265, 1269. After Griffith was convicted, the Court of Appeals for the D.C. Circuit reversed Griffith's conviction, holding that the warrant lacked probable cause because "the affidavit in this case conveyed no reason to think that Griffith, in particular, owned a cell phone. There was no observation of Griffith's using a cell phone, no information about anyone having received a cell phone call or text message from him, no record of officers recovering any cell phone in his possession at the time of his previous arrest (and confinement) on unrelated charges, and no indication otherwise of his ownership of a cell phone at any time." *Id.* at 1272.

Additionally, the Court held that "to justify a search of the apartment to seize any cell phone owned by Griffith...police needed reason to think not only that he possessed a phone, but also that the device would be located in the home and would contain incriminating evidence about his suspected offense" *Griffith*, 867 F.3d at 1273. The Court found that this was also lacking, because while people ordinarily carry cell phones on their person, the warrant "gave officers authority to search Griffith's apartment for any cell phones without regard to his presence on the scene." *Id.*

Here, as in *Griffith*, the warrant permitted the seizure of items that the government had no probable cause to believe would be found in the residence. For starters, the police sought to seize phones and other communication devices from the residence, but set forth no information to even arguably establish probable cause that there were any phones in the residence, or that Mr. Creek

would be in the residence with his phone at the time.[1] This is also true with almost all of the items that the police sought to seize, including items such as safes, travel documents, identification documents, and other items. Even assuming that the affidavit set forth sufficient probable cause to establish any source's knowledge as to what was in the residence (which for reasons below it did not), there was simply no information provided that the vast majority of the items that the police sought to seize were located in the residence at all.

Critically, as discussed in *Griffith*, the mere fact that many people own an item (e.g., 90% of people own a cell phone) does not provide a sufficient basis to include such an item on a search warrant. For the reasons stated in *Griffith*, this lack of probable cause in the affidavit, by itself, renders the search invalid.

But there is more. The only information set forth in the affidavit as to what would be found in the home comes from the "concerned citizen, aka CC-1. Ex. 1 at 10. But the affidavit provides no information whatsoever about CC-1's basis for making these claims. The affidavit does not allege, for example, that CC-1 was ever in the home. The affidavit also provides no basis to establish CC-1's credibility and reliability. The Supreme Court has held that the "veracity" or "reliability" and the "basis of knowledge" for an informant's tip are critical to a judicial officer's evaluation of probable cause. *Illinois v. Gates,* 462 U.S. 213, 233, 239 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others").

---

[1] The affidavit's allegation that CI-1 made controlled telephone calls for the Eastern District Action Team falls conspicuously short here, because there is no claim that any of these calls were conducted with Mr. Creek. Ex. 1 at 9. Also, notably absent from the affidavit is any allegation by CI 1 or any other source that Mr. Creek owns a phone, pager or PDA.

In *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), the police applied for a search warrant based on, as in this case, the information provided by a putative "concerned citizen," which was set forth in the affidavit as follows:

> Informant stated to applicant the directions to this residence and the directions have been confirmed to be true by the applicant through surveillance on this date. The informant described the substance he/she believed to be marijuana and the informants [sic] description is consistent with the applicants [sic] knowledge of marijuana. Informant described transactions between residents and patrons that purchase marijuana at this residence and his/her descriptions of these actions are consistent with applicants [sic] knowledge of how marijuana is packaged and sold. Informant has personally observed residents selling marijuana at this residence within the last 48 hours. Informant also observed a quanity [sic] of un-sold marijuana at this residence within the last 48 hours.

*Id.* at 118. The Fourth Circuit found that this information was insufficient to establish probable cause because it "depended on information from an unnamed informant, and provided no indication of that informant's truthfulness or reliability . . . [and also] included conclusory descriptions apparently designed to establish the informant's trustworthiness." *Id*. at 120. The Court suppressed the search, finding that the "magistrate judge found sufficient indicia of reliability in the affidavit by simply accepting the unsupported conclusions of the affidavit, and overstating the substance of the information provided in that affidavit." *Id*. at 120. The Court concluded that the affidavit "fell far short of providing probable cause for a search warrant." *Id.* But the Court did not stop there. It went on to note the danger of relying on this type of evidence: "Upholding this warrant would ratify police use of an unknown, unproven informant—with little or no corroboration—to justify searching someone's home. The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." *Id*. 120. Importantly, the Fourth Circuit made this finding despite the fact that the police corroborated the address and directions to the residence provided by the tipster.

Like *Wilhelm*, there was no basis set forth for the judicial officer to even conclude that the tipster was, as claimed by the police, a concerned citizen. *See Wilhelm*, 80 F.3d at 121 ("the affidavit does not disclose any basis for [the officer's] conclusion that her tipster was a "concerned citizen."). But here, the information about the claimed "concerned citizen" falls short even of that in *Wilhelm*: unlike *Wilhelm*, where the tipster described transactions and claimed to have been in the defendant's residence within 48 hours, the affidavit here provides no such basis of knowledge. Simply put, there was no basis here to give the alleged claims of the putative concerned citizen any weight in determining probable cause. Besides the unsupported claims of the "concerned citizen," which specifically mention Mr. Creek's address, there is then no credible information in the affidavit alleging criminal activity by Mr. Creek at 1315 Homestead Street.

Moreover, even if the affidavit established CC-1's reliability and basis of knowledge as to what would be found in the home by showing that CC-1 had, for example, been in the home, the failure to establish *when* CC-1 was in the home would, by itself, defeat probable cause. *See United States v. Doyle*, 650 F.3d 460, 474 (4th Cir. 2011) ("assuming *arguendo* that a reasonable officer could believe that the pictures possessed by Doyle contained child pornography, it was unreasonable to believe that probable cause was demonstrated to search Doyle's home given the complete absence of any indication as to when the pictures were possessed . . . there is absolutely no indication in the affidavit as to when probable cause to search arose"). While the affidavit states that CC-1 provided information between December 2018 and January 2019, any information as to when CC-1 would have been in the home or otherwise learned the information is completely lacking.

For all of these reasons, the search warrant was not supported by probable cause and was therefore invalid.

**B. The search warrant was overbroad.**

A related but distinct flaw in the search warrant is its overbreadth. The search warrant permitted the seizure of all items listed, regardless of who owned the items or where in the house the items were located. The warrant authorized seizure of all items in the house regardless of who owned them, despite the fact that Detective Cornelius' affidavit shows that he knew that Mr. Creek did not reside in the residence alone. Ex. 1 at 13 (referring to Mr. Creek "and residents of 1315 Homestead Street . . . "). But while noting that multiple individuals lived at the residence, the affidavit provides no basis whatsoever for its conclusory allegation that other residents of the house "are participating in a conspiracy to store, possess, and distribute illegal narcotics . . ." *Id.* Thus, even if we assume *arguendo* that the police provided sufficient probable cause to suspect that Mr. Creek was involved in distribution of controlled substances, the affidavit completely fails to set forth any factual support for the claim that other residents of the home were engaged in such conduct.

In *Griffith*, the D.C. Circuit found that an analogous warrant overbroad, reasoning as follows:

> The warrant in this case authorized police to search for and seize "all electronic devices to include but not limited to cellular telephone(s), computer(s), electronic tablet(s), devices capable of storing digital images (to include, but not limited to, PDAs, CDs, DVD's [and] jump/zip drives)." A. 36. The affidavit, as explained, failed to establish probable cause to suspect that any cell phones or other electronic devices belonging to Griffith and containing incriminating information would be found in the apartment. Yet the warrant did not stop with any devices owned by Griffith, which already would have gone too far. It broadly authorized seizure of *all* cell phones and electronic devices, without regard to ownership. That expansive sweep far outstripped the police's proffered justification for entering the home—viz., to recover any devices owned by Griffith . . . Indeed, the terms of the warrant allowed officers unfettered access to any electronic device in the apartment even if police *knew* the device belonged to someone other than Griffith . . . The warrant's overbreadth is particularly notable because police sought to seize otherwise lawful objects: electronic devices.

867 F.3d at 1776. The Court held that the "warrant should have limited the scope of permissible seizure to devices owned by Griffith, or devices linked to the shooting." *Id*.

In *Lyles*, the Fourth Circuit likewise found that a warrant was "astoundingly broad" where it "empowered the police to seize a host of things seemingly unconnected to marijuana possession. It permitted, for starters, the seizure of any computers, toiletries, or jewelry, and the search of every book, record, and document in the home" as well as "the search and seizure of any cell phones in the home." *Lyles*, 910 F.3d at 795.

The search warrant in this case is similar to the overbroad warrants in *Griffith* and *Lyles*. The warrant permitted the seizure of *all* mobile phones, pagers, PDAs, travel documents, identification documents, firearms, ammunition, and storage devices, and other items, without regard to their ownership or link to the alleged crime. Ex. 1 at 14.

**C. The search warrant permitted the search of a residence that lacked a nexus to the alleged crime of distributing controlled substances.**

The search warrant in this case was also flawed because there was no probable cause to believe that the residence at issue was connected to the crime alleged. "[T]he mere fact that a target of search committed a crime does not automatically warrant search of an address." *United States v. Kennedy*, 2007 WL 2156611, at *5 (E.D. Va. July 25, 2007), *aff'd,* 292 F. App'x 240 (4th Cir. 2008) citing *United States v. Lalor,* 996 F .2d 1578, 1582 (4th Cir.1993)).

In *Kennedy*, for instance, the crime was a shooting that occurred several miles from the home that was searched. *Kennedy*, 2007 WL 2156611, at *5. The Court reasoned that the affidavit lacked a sufficient nexus to the crime where it "explaine[d] merely that such items were likely to be found at the home because 'persons who commit crimes keep the fruits and instrumentalities of their crimes in their primary residences.'" On its own, this is not a sufficient ground for probable cause to believe that contraband or evidence of a shooting will be found there. *Id*.

Numerous courts have found that the government fails to establish a nexus between the offense of drug distribution and the residence of the suspect where there is a lack of specific and reliable information indicating the presence or drugs or other contraband at the residence. *See, e.g., United States v. Lalor*, 996 F.2d 1578, 1579-80, 1582 (4th Cir. 1993) (holding warrant for search of defendant's residence invalid where it was based on information from two confidential informants who told police that the defendant was selling drugs on certain streets near his residence, but did the affidavit did not "describe circumstances that indicate such evidence was likely to be stored at the defendant's residence"); *United States v. Woodley*, 447 F. Supp. 3d 487, 491 (E.D. Va. 2020) (in case where defendant was stopped with distribution quantity of marijuana in the same area as his residence, held that there was a lack of nexus between the residence and the distribution of marijuana because of failure to establish that the defendant possessed any more drugs than he had in his vehicle, and that even if there was evidence that the defendant possessed more drugs, those drugs would be located the residence, and police did not see the defendant leaving his residence); *United States v. Lewis*, No. 4:19cr52 (E.D. Va. Oct. 24, 2019) (Allen, J.) (holding warrant to search a residence invalid where it was based on a search of the defendant in a car that yielded "less than half of one ounce of marijuana in three separate baggies, plus an additional seven hundred dollars."); *United States v. Brown,* 828 F.3d 375, 382 (6th Cir. 2016) (holding warrant defective because the supporting affidavit "contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there"); *United States v. McPhearson*, 469 F.3d 518, 522, 524 (6th Cir. 2006) (rejecting argument that "an individual arrested outside his residence with drugs in his pocket is likely to have stored drugs and related paraphernalia in the same residence" where law enforcement arrested the defendant on his front porch and found 6.4 grams of crack cocaine in his pocket.").

In this case, the affidavit is devoid of any reliable evidence that Mr. Creek conducted any of the alleged unlawful activities from the 1315 Homestead residence. First, the only claim in the affidavit with any specificity as to what might be found in the residence at issue comes from CC-1. For reasons already discussed, the claims made by CC-1 should be excised from the affidavit due to the complete lack of information on CC-1's veracity, reliability, and basis of knowledge.

Furthermore, CC-1 did not specifically allege that Mr. Creek conducted any drug-trafficking activity from the residence, nor that Mr. Creek conducted any drug-trafficking at all, for that matter. Rather, CC-1's uncorroborated tip is limited to what was allegedly in the residence. Nothing more.

CI-1's claims about Mr. Creek's alleged criminal conduct make no reference to the residence at all. CI-1 merely alleged drug distribution and other criminal conduct throughout areas of Baltimore generally. In fact, the information provided by CI-1, if anything, diminishes the claim that contraband would be found in Mr. Creek's residence because CI-1 specifically alleged that other individuals act at the behest of Mr. Creek in distributing drugs and committing other crimes. The information provided by CC-1 thus fails to provide any nexus between the suspected crimes and Mr. Creek's residence.

The mere fact that Mr. Creek previously gave this location as his address is insufficient. *Kennedy*, 2007 WL 2156611, at *13. There is no other evidence such as, for example, surveillance or a corroborating trash pull to indicate that any part of the offense took place at the residence or that drugs and firearms would be found there. *See, e.g.*, *United States v. Randolph*, 261 F. App'x 622, 626 (4th Cir. 2008) (nexus between a crime and a residence can be shown "by information or surveillance of a residence linking the residence to drug activity, such that it is reasonable to believe that evidence of drug activity will be found at the residence."); *United States v. Lyles*, 910

F.3d 787, 793 (4th Cir. 2018) (discussing prior case where Fourth Circuit upheld a search warrant based on an anonymous tip that was confirmed by recovering heroin residue and packaging from a trash pull).

For all of these reasons, the affidavit does not establish a sufficient nexus between the criminal conduct and the place to be searched, and therefore the search warrant on which it was based violated the Fourth Amendment.

In sum, the search warrant was invalid because it lacked probable cause, was overly broad, and permitted the seizure of items at a location that lacked a sufficient nexus to the crime of drug distribution that was being investigated.

### D. THE GOOD FAITH EXCEPTION DOES NOT APPLY.

#### 1. It was not objectively reasonable for the magistrate and the executing officers to rely on the warrant affidavit in this case.

The Supreme Court has held that the good faith exception does not apply where a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (internal quotations omitted). Furthermore, "a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.*; *See also United States v. Bynum,* 293 F.3d 192, 195 (4th Cir. 2002).

It should have been clear to the executing officers, including Detective Cornelius, that the affidavit here lacked indicia of probable cause and was facially deficient in at least three respects, even assuming a drug offense was committed by Mr. Creek: (1) there was no basis provided to establish that many of the items listed (e.g., phones, safes, travel documents, photographs) would be found in the house, (2) there was no probable cause whatsoever to seize items, including phones,

belonging to other individuals and the overbreadth of the warrant in this respect was plain from the face of the warrant, and (3) the warrant was facially deficient in establishing a nexus between the alleged crime and the residence.

First, there was nothing in the affidavit to establish probable cause to seize many of the items listed in the search warrant and the attachment, and it was therefore objectively unreasonable to rely on such a warrant. While the affidavit goes on at length about why evidence *might* be possessed by someone involved in drug distribution, it fails to provide any basis to conclude that the vast majority of the items listed in the search and seizure warrant would actually be found there.

CI-1 provided no information about the 1315 Homestead residence. As such, it was not objectively reasonable to rely on anything the affidavit said regarding CI-1 to conclude that contraband or the broad list of other items would be found in the home, or that the crime or any part of it was being carried out of the home.

As to CC-1, setting aside for the moment the complete lack of information as to reliability and knowledge, CC-1 did not notify police of the existence of many items authorized to be seized—such as phones, safes, travel documents, identification documents, pagers, and other items—in the home. It is apparent from the face of the affidavit that it contains no evidence whatsoever to establish probable cause that these items were in the residence. CC-1's failure to allege that any drug distribution was being conducted out of the home likewise renders it objectively unreasonable to rely on CC-1's information for any nexus between the residence and the crime.

Furthermore, it was objectively unreasonable to rely on CC-1's *at all* when there was no evidence that CC-1 was credible and reliable, or had ever been in the home or had another basis

of knowledge for what would be in the home. While CC-1 claimed that there were drugs and firearms in the home, the police failed to corroborate this fact and completely failed to establish CC-1's credibility or basis of knowledge. As noted, the Fourth Circuit has decried such an approach to obtaining warrants in no uncertain terms. *See Wilhelm, supra*.

But even assuming CC-1 had some basis of knowledge, the lack of any indication as to *when* CC-1 learned that the contraband was in the home likewise renders reliance on CC-1's claims objectively unreasonable. *Doyle*, 650 F.3d at 475 ("[T]he totality of the information provided to the magistrate included no indication as to when the events supposedly creating probable cause to search took place, we cannot conclude that the officers reasonably relied on the resulting search warrant.") (footnote omitted))

For all of these reasons, it was not objectively reasonable for the officers to rely on the warrant to conclude that the items sought to be seized would actually be in the home, or that there was a nexus between the home and the offense of drug distribution.

Further, it was also objectively unreasonable for the search warrant to seek seizure of all of the listed items in the house, including phones, regardless of ownership. In the affidavit drafted by Detective Cornelius, it is clear that he was aware that other individuals resided in the residence. Yet, in the warrant and attachment, the search is not limited to items belonging to Mr. Creek, or located in a specific part of the house. *See, e.g., Griffith*, 867 F.3d 1265 at 1278 (declining to find good faith exception applied where "[n]othing in the affidavit or warrant supported—or could have supported—probable cause to seize any and all phones, tablets, computers, and other electronic devices in the apartment.'). The conclusory allegation that others in the residence were involved in the offense was plainly insufficient to establish probable cause for this claim. It did not offer a single supporting fact to establish that any other person was involved in drug distribution.

For all of these reasons, to the extent that the government attempts to come forward with a claim of good faith, any one of the foregoing points is sufficient to defeat such a claim.

**2. The actual scope of the search and seizure is irrelevant to suppression and the "good faith" determination.**

In determining whether the good faith exception applies, it is of no moment that the officers somehow narrowed the scope of their search and seizure, so as to exclude certain items. It also does not matter if the item sought to be introduced at trial is unrelated to an item that caused the warrant to be facially overbroad. Instead, the focus of the inquiry is the facial validity of the warrant and the objective reasonableness of the officers executing it. Thus, in *Griffith*, for example, the focus of the D.C. Circuit's decision to suppress was the warrant's authorization to search and seize all phones in the residence. However, in that case the government did not even introduce any evidence from seized cell phones; the sole object the government sought to introduce was a firearm that was thrown out of the window of the residence. Thus, the fact that police here may have focused the seizure drugs and ammunition, and may not actually have taken items such as cell phones from third parties, or other items listed in the overbroad warrant, is of no moment in determining the warrant's validity. In other words, the actual scope of the search cannot be considered in determining whether there was good faith.

## CONCLUSION

For all of the foregoing reasons, this Court should hold that all evidence obtained from the search warrant of 1315 Homestead Street violated the Fourth Amendment and is therefore inadmissible at trial.

Respectfully Submitted,

By: */s/ Eugene V. Gorokhov*
Eugene Gorokhov,
D. Md. Bar. 07233

*Attorney for Defendant*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed under seal through the Court's CM/ECF system, and a copy has been provided to counsel for the government.

Respectfully Submitted,

By: */s/ Eugene V. Gorokhov*

Eugene Gorokhov,
D. Md. Bar. 07233
*Attorney for Defendant*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
eugene@burnhamgorokhov.com